IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| HERSCHEL HURD #1566322 | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:15cv734 |
| KAREN BARNETTE, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Herschel Hurd, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are Officers Karen Barnette, Johnathan Campbell, and Tawanna Monroe.

**I. The Plaintiff's Claims**

The operative pleading in the lawsuit is Hurd's more definite statement of complaint (docket no. 23). In his complaint, Hurd stated that on October 1, 2014, Barnette came to his cell at 5 a.m. for a scheduled commissary purchase. She took his ID card. Because Hurd was in administrative segregation, his purchase was supposed to be delivered to him.

At 4 p.m., Hurd was escorted to the shower. Barnette arrived on the pod to deliver the commissary purchases, along with the inmate commissary workers. She went to the cells on the ground floor to get the signatures and thumbprints of the prisoners who had made purchases, while one of the inmate workers went to the second floor to do the same. Hurd was not in his cell because he was in the shower, so the inmate worker left.

1

At 5:12 p.m., Hurd was escorted back from the shower. He found his ID card on the floor at the door of his cell, and his commissary purchase was not there. Hurd was told that Barnette had already left for the day and that he should let her know what had happened the next day. The pod officer also told him to file a grievance, which he did.

On October 3, 2014, around 12:42 p.m., Sgt. Campbell arrived at Hurd's cell to conduct a search. He told Hurd he needed to search the cell to see if Hurd had received his $58.55 worth of commissary or not.

Barnette arrived to help Campbell with the search, which was completed at 1:22 p.m. The items purchased by Hurd were not found. Barnette left and Campbell took Hurd back to his cell. Campbell told him that Barnette should bring him his commissary goods or refund his money since the items purchased were not found in his cell.

Campbell returned at 1:35 p.m. to conduct a second search. During this search, he confiscated items which had nothing to do with Hurd's commissary purchase, including shoes, a hot pot, and a radio. Campbell stated that he needed all of Hurd's purchases as well as his receipts and property papers, but the property would be returned in a couple of hours. Campbell also took Hurd's ID card. Hurd filed another grievance because his property was not returned in a few hours and he did not get his commissary purchases or his ID card. As a result of not having his ID card, Hurd contended that he was denied a number of meals over a period exceeding 30 days.

On October 30, 2014, Hurd stated that Monroe came to his cell to return the confiscated property. She told him that he did not have to file a grievance and for that, she was not giving him his radio back. Hurd received back his shoes, his hot pot, and everything else besides his radio, receipts, and property papers. Monroe told him she was keeping the radio and his property papers. She smiled at him and said that he should file another grievance, which he did.

For the next two months, Hurd went without an ID card. In February of 2015, he wrote to Monroe asking why he had not been approved to buy another radio after making requests in

November and December. She told him his request had not been approved. Hurd also learned that there were no property papers on file for the property taken on October 3.

Hurd argued that Barnette committed theft by stealing $58.55 out of his account. She did not provide him with a hearing before taking the money. He claimed that the October 3 cell search and the confiscation of his property was done in retaliation for the fact that he had filed a grievance. He further asserted that the taking of his property and his ID card violated the Fourth Amendment and the Eighth Amendment, and that the officers knew ID cards are required in order to obtain meals. Hurd maintained that Monroe retaliated against him when she refused to return his radio, although he acknowledged he received the return of his shoes, his hot pot, and everything else besides his radio and property papers. Hurd further alleged that the fact that confiscation papers were not on file was a violation of the Freedom of Information Act. For relief, Hurd asked for compensatory and punitive damages in an amount over $1,000,000.00, stating that he suffered mental and emotional pain, physical pain from going without food, embarrassment, discomfort, and inconvenience.

## II. The Motion to Dismiss

The Defendants filed a motion to dismiss arguing that Hurd's claims for compensatory damages is barred because he did not demonstrate any physical injury and his claim for punitive damages lacks merit because he did not allege facts sufficient to justify an award of punitive damages. The Defendants asserted that Hurd did not allege how many meals he missed nor did he claim to have sought medical attention.

The Defendants maintained that by Hurd's own account, the taking of his property was a random and unauthorized deprivation, rendering pre-deprivation process impossible. They asserted that his retaliation claims are conclusory and that Hurd failed to show his free speech rights were curtailed; on the contrary, he routinely filed grievances and letters to prison officials. The Defendants maintained that Hurd's Eighth Amendment claims are conclusory and he failed to show

deliberate indifference, that Hurd's Fourth Amendment claim is frivolous, and they are entitled to qualified and Eleventh Amendment immunity.

In response, Hurd argued that the pain he suffered from going without food is a qualifying physical injury and the multiple cell searches prove he was the victim of retaliation. He contended that prisoners have a limited privacy interest in their cells and that the refusal to return his radio also proves retaliation. Hurd further asserted that the policies and procedures for the deduction of money from his account was the pre-deprivation process to which he was entitled and that he has shown such conduct as to justify punitive damages.

### III. The Report of the Magistrate Judge

The Magistrate Judge stated that a random and unauthorized deprivation of a property or liberty interest does not violate due process if the State furnishes an adequate post-deprivation remedy. Hurd alleged that Barnette stole his money and that his radio was confiscated in retaliation for his having filed grievances, both of which are random and unauthorized deprivations. Because the State furnishes an adequate post-deprivation remedy, the Magistrate Judge determined that Hurd's claims in this regard lacked merit in federal court under the *Paired/Hudson Doctrine*, as set out in *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994).

The Magistrate Judge determined that Hurd had not shown a qualifying physical injury under 42 U.S.C. §1997e(e) for purposes of obtaining damages for mental or emotional injury and that Hurd's allegations did not rise to the level of entitlement to punitive damages. The Magistrate Judge further stated that Hurd's claims of retaliation amounted to little more than his personal belief that he had been the victim of retaliation and that in any event, the allegedly retaliatory conduct was *de minimis*.

The Magistrate Judge concluded that Hurd's allegations failed to set out a valid claim of cruel and unusual punishment, Hurd did not have a protected liberty interest in his cell, and his claim under the Freedom of Information Act lacked merit. The Magistrate Judge further stated that the Defendants were entitled to qualified and Eleventh Amendment immunity.

**IV. Hurd's Objections to the Report and his Amended Complaints**

After stating that the two cell searches complained of took place on October 3, Hurd asserts that he was strip searched by Campbell during the course of the cell search, which he claims was done for harassment. He states that his exhibit C (docket no. 23, p. 10), consisting of what appeared to be a blank disposition of property form, in fact is not blank, but contains very faint writing by Campbell. According to Hurd, Campbell wrote on this form as justification for the confiscation of Hurd's property that "offender stating never received commissary 10/1/14." Close examination of Exhibit C does not reveal any writing on the form; however, the Court will assume that Hurd is correct in stating that the form is too faint to read and in what he says was written on it. In recounting Hurd's claims, the Magistrate Judge acknowledged that according to Hurd, Campbell had written this on the confiscation paper.

After stating that the sentence in the Magistrate Judge's Report reading "there is no such pro 8 on file to match this discipline" should read "there is no such pro 8 on file to match this description," Hurd asserts that the *Paired/Hudson Doctrine* should not apply in this case. He cites *Patterson v. Coughlin*, 761 F.2d 886 (2nd Cir. 1985), *cert. denied*, 106 S.Ct. 879 (1986) as holding that official conduct could violate a due process liberty interest and whether or not conduct of a state official was random and authorized must be viewed from the position of one who possesses the state-delegated authority to grant a hearing when circumstances and the Constitution so require. Hurd argues that it should not be permissible for prisoners to handle the funds and commissary goods purchased by another.

Hurd next states that he did not know that he was required to state specific facts and asks permission to amend his complaint. He points out that in *Johnson v. Pfeiffer*, 821 F.2d 1120 (5th Cir. 1987), the Fifth Circuit remanded the case and ordered that the plaintiff be allowed to amend his complaint to clarify the factual and legal bases of his claims and an attorney was appointed to assist the plaintiff in doing so. Hurd asserts that he is simply asking for the same treatment in his case.

5

Hurd argues that he has set out a viable retaliation claim because if he had not filed a grievance about money being taken from his account, Campbell and Barnett would not have searched his cell twice in less than an hour or confiscated his property and his ID card. If he had not filed a grievance about Campbell taking his property, Monroe would not have kept his radio or destroyed the confiscation papers instead of filing them.

Hurd also asserts that his property which was kept for 27 days, the strip search by Campbell, the cell searches, the loss of his radio and the taking of his ID card should not be considered *de minimis.* He states that 27 days of cell and commissary restrictions given as a disciplinary punishment is not considered *de minimis*, citing *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

Hurd further alleges that his Fourth Amendment claim is meritorious, stating that Texas prison policies only allow for one cell search every 72 hours but his cell was searched twice in less than 24 hours, violating policy. He states that if it is true that the Freedom of Information Act applies only to federal agencies, he wishes to change his claim to one of state law, which he refers to as the "Open Act." Hurd goes on to contend that he has overcome the Defendants' entitlement to qualified immunity, he should be entitled to compensatory and punitive damages as well as nominal damages, and that he has stated a claim upon which relief may be granted.

In an attached motion for leave to file his third amended complaint, Hurd provides a list of dates upon which he was allegedly denied food, comprising 24 meals in 32 days. When he complained about pain from not eating, officers laughed at him. Lt. Kelly told Hurd he would get him a temporary ID card but did not. The officers refused to report that he needed medical care even though he suffered blackouts from going without food. He wishes to add discrimination claims against Campbell and Barnett for causing him to go without food and against Monroe for not allowing him to re-purchase a radio.

Hurd also attaches a supplemental complaint asserting that in November of 2015, Monroe retrieved his hot pot because Hurd had asked to purchase a new one and had to turn in his old one. Although she gave him the papers for it, she did not document this, because records show that he

still has that hot pot. This makes him unable to purchase a new one. He asserts that this states a claim for falsifying documents and discrimination.

## V. Discussion

There is no dispute that according to Hurd, both searches of his cell took place on the same day, October 3, nor that according to Hurd, Campbell stated as justification for searching his cell that Hurd claimed not to have received his commissary purchases.

Hurd complains that in the course of removing him from his cell during a search for the commissary items, Campbell strip searched him for purposes of harassment. He offers no facts in support of his allegation that this search was conducted for purposes of harassment rather than as part of an effort to locate missing property. The TDCJ search policy, Administrative Directive 03.22, provides that it may be necessary at times to strip search offenders to ensure staff safety and offender safety and to detect the presence of contraband. *See Grant v. Wisener*, civil action no. 6:11cv372, 2013 U.S. Dist. LEXIS 40765, 2013 WL 1196299 (E.D.Tex., March 22, 2013), *Report adopted at* 2913 U.S. Dist. LEXIS 73021, 2013 WL 1196090 (E.D.Tex., May 23, 2013), *aff'd* 594 F.App'x 278, 2015 U.S. App. LEXIS 3085 (5th Cir., February 27, 2015). Other than a conclusory allegation of "harassment," Hurd has offered nothing to show that the search was unreasonable or that it was conducted for improper purposes rather than in an attempt to locate missing property. *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999); *Waddleton v. Jackson*, 445 F.App'x 808, 2011 U.S. App. LEXIS 214595, 2011 WL 5025248 (5th Cir., October 21, 2011). This objection is without merit.

Hurd cites the Second Circuit's decision in *Patterson v. Coughlin* as stating that whether a state official's conduct is random or unauthorized must be viewed from the position of one who possesses the state-delegated authority to grant a hearing, and since the officials with the power to give the plaintiff a hearing had failed to do so, the Second Circuit held the *Paired/Hudson Doctrine* inapplicable. However, the Fifth Circuit has specifically disagreed with *Patterson.* In *Holloway v. Walker*, 790 F.2d 1170, 1172-73 (5th Cir. 1986), the Fifth Circuit observed that the Supreme Court

7

had rejected an argument similar to that accepted by the Second Circuit in *Patterson*. The Fifth Circuit explained that "the ability of the individual state employee to provide pre-deprivation process does not determine whether a due process violation has taken place. When state procedures provide due process and are violated by a random or unauthorized act of a state employee, even a high-ranking state employee, *Parratt/Hudson* established that no federal constitutional due process violation has occurred." Because Hurd is complaining of a random and unauthorized deprivation of property, his claim is foreclosed by the existence of adequate state post-deprivation remedies. *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994); *Gardner v. Hudson,* civil action no. 5:09cv189, 2010 U.S. Dist. LEXIS 8556, 2010 WL 446562 (E.D.Tex., February 2, 2010), *appeal dismissed as frivolous* 409 F.App'x 791, 2011 U.S. App. LEXIS 2252, 2011 WL 396474 (5th Cir., February 3, 2011). This objection is without merit.

In his proposed third amended complaint, Hurd asserts that he was denied food on 24 occasions over a period of 32 days because he did not have an ID card. He claims he had to have an ID card in order to get meals, but he does not allege that he missed all of the meals; on the contrary, 32 days of three meals apiece comprise 96 meals, indicating that during this period of time, Hurd was able to access 72 meals despite not having an ID card.

There is no constitutional right to three meals a day. *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986); *Flores v. TDCJ Transitorial Planning Department*, civil action no. 2:14cv283, 2015 U.S. Dist. LEXIS 176727, 2015 WL 10436114 (S.D.Tex., November 17, 2015), *Report adopted at* 2016 U.S. Dist. LEXIS 29718, 2016 WL 879831 (S.D.Tex., March 7, 2016, appeal dismissed). The Fifth Circuit has held it is doubtful that prisoners missing 50 meals in five months were denied anything close to a minimal measure of life's necessities. *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998).

Furthermore, Hurd's exhibits show the response to the grievance in which he mentions his ID card states that according to Mrs. Cannon, the commissary supervisor, Hurd's ID card was deactivated because Hurd claimed his account had been compromised. Cannon is not named as a

defendant in the lawsuit and Hurd does not allege that any of the named defendants deactivated his card or had authority to do so.[1] Hurd's objection on this point is without merit.

The *Johnson v. Pfeiffer* case, cited by Hurd, challenged the policies and procedures used by the Texas Board of Pardons and Paroles. The Fifth Circuit determined that the district court had misconstrued the plaintiff's claims by incorrectly ascertaining that these claims sounded only in habeas corpus and remanded the action to the district court. Hurd has not shown any similarities between his case and *Johnson.* His objection on this point is without merit.

Hurd argues that if he had not filed a grievance about money being taken from his account, Campbell and Barnett would not have searched his cell twice in less than an hour or confiscated his property and his ID card, and that if he had not filed a grievance about Campbell taking his property, Monroe would not have kept his radio or destroyed the confiscation papers instead of filing them. He offers nothing to show that but for his grievances, the actions by the officers would not have occurred beyond his bare assertion that it is so. *See Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation), *citing Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

Hurd also asserts that the allegedly retaliatory actions were not *de minimis*. The alleged deprivation of 24 meals in a 32 day period is not *de minimis*; however, Hurd has not shown this was the result of retaliation. As noted above, the grievance which he filed indicates that his ID card was deactivated because Hurd reported that his account had been compromised, and he does not show that any of the named defendants were responsible for deactivating it or had the authority to do so.

---

[1] None of the grievances attached by Hurd to his original complaint or his more definite statement say anything about missing any meals. In the grievance which refers to his ID, Hurd states that if his card is deactivated, he will not be able to make any commissary purchases for a few months but does not mention not being able to eat. While exhaustion of administrative remedies was not raised as a defense nor discussed by the Magistrate Judge and the Court makes no express findings on this issue, Hurd's claims concerning denial of meals does not appear to have been exhausted.

He offers nothing beyond speculation to suggest that but for the grievances he filed, his ID card would not have been deactivated. The loss of his radio and the temporary deprivation of other property was *de minimis*. *Ali v. Jones*, civil action no. 4:07cv337, 2007 U.S. Dist. LEXIS 52901, 2007 WL 2141381 (S.D.Tex., July 19, 2007) (destruction by officer of personal property including four books, ten magazines, vitamins, pencil sharpeners, ink pens, and drawing pencils was *de minimis* for purposes of a retaliation claim; *Scott v. Haney*, civil action no. 12-0439, 2012 U.S. Dist. LEXIS 178826, 2012 WL 6569308 (M.D.La., November 9, 2012), *Report adopted at* 2012 U.S. Dist. LEXIS 177868, 2012 WL 6569295 (M.D.La., December 17, 2012) (destruction of some of the plaintiff's legal work was *de minimis*).

Although Hurd cites *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003), that case held that 27 days of cell and commissary restrictions was not *de minimis*. In reaching this conclusion, *Hart* cited *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) as stating that "action comparable to transfer to administrative segregation would certainly be adverse." While 27 days of cell restriction may be comparable to a transfer to administrative segregation, the temporary deprivation of property does not fall into the same category, as stated in *Ali* and *Scott*. Hurd's objection on this point is without merit.

Although Hurd claims that prisoner cells may be searched only once every 72 hours, no such policy exists. The **TDCJ Offender Orientation Handbook** (April 2016), p. 25, provides that "offenders and their living areas may be searched by staff at any time." Even if such a policy did exist, Hurd has not shown that a violation of this policy amounts to a constitutional deprivation. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Hurd states that if the Freedom of Information Act applies only to federal agencies, he wants to change the basis of his claim to what he calls the "Open Act," apparently referring to the Texas Open Records Act, Tex. Gov. Code §552.001 *et seq.* However, this act is purely a creation of state law, and any violations of this Act do not implicate the Constitution or laws of the United States. The Northern District of Texas has explained that "since the Texas Open Records Act neither

implicates provisions of the United States Constitution nor federal statutes, this court is without jurisdiction over any claim brought pursuant to Tex. Gov. Code §552.001-.353." *Huckeba v. Greenville Police Department*, civil action no. 3:05cv437, 2005 WL 1502063 (N.D.Tex., June 24, 2005), *Report modified in part on other grounds and adopted at* 2005 WL 1837028 (N.D.Tex., July 29, 2005); *see also Johnson v. Dallas Independent School District*, 38 F.3d 198, 199 (5th Cir. 1994) (civil rights lawsuit under 42 U.S.C. §1983 requires the showing of a deprivation of a right secured by the Constitution or laws of the United States). Hurd's objection on this point is without merit.

In his motion for leave to file his third amended complaint, Hurd contends that unnamed officers laughed at him and that Lt. Kelly told him he would get Hurd a new ID card but he did not. He states that the officers would not get him medical attention, although he does not indicate that he was unable to file sick call requests himself. These allegations appear to be providing background information for Hurd's claims against Campbell, Barnette, and Monroe rather than an attempt to add new claims and defendants to the lawsuit; Hurd does not ask that Kelly or the unknown officers be added as defendants nor does he state that he has exhausted his administrative remedies with regard to these allegations.

Instead, Hurd states that he wishes to add deliberate indifference and discrimination claims against Campbell, Barnette, and Monroe. The Supreme Court has explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Hurd has failed to show that the Defendants knew of and disregarded an excessive risk to his health or safety, given that he has not shown any of the named Defendants deactivated his ID card or had authority to do so. When Hurd filed a grievance about his ID card, he stated that he would not be able to make any

11

commissary purchases without one, but said nothing about not being able to eat. In the interest of justice, any new claims in the Plaintiff's proposed third amended complaint should be dismissed without prejudice, with the statute of limitations suspended for a period of 60 days following the date of entry of final judgment.

Nor has Hurd pleaded a viable discrimination claim. He has not shown that he is a member of a protected class and faced discrimination on that basis, nor any other facts demonstrating discrimination. He has identified no one similarly situated to him who received different treatment or pointed to facts showing that any such different treatment had no rational basis. *See, e.g.*, *Bell v. Woods*, 382 F.App'x 391, 2010 WL 2545421 (5th Cir., June 18, 2010), *citing Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990); *accord*, *Adkins v. Kaspar*, 393 F.3d 559, 566 (5th Cir. 2004) (rejecting discrimination claim based on "bald, unsupported, conclusional allegations"). Hurd's objection on this basis is without merit.

In his proposed supplemental complaint, Hurd contends that Monroe retrieved his hot pot because Hurd had asked to purchase a new one and therefore was required to turn in his old one. He acknowledges that Monroe gave him papers to document this but alleges that she apparently failed to file these papers, because records show that he still has that same hot pot. This makes him unable to purchase a new one. Hurd asserts that this states a claim for falsifying documents and discrimination.

Hurd's contention that Monroe "falsified" paperwork pertaining to his hot pot does not state a claim of constitutional dimensions. *See generally Spellmon v. Price*, 100 F.3d 953, 1996 U.S. App. LEXIS 29314, 1996 WL 625422 (5th Cir., October 10, 1996) (no liberty interest in not having false statements or evidence presented at a disciplinary hearing); *Crumbley v. Dawson,* civil action no. 9:09cv14, 2010 U.S. Dist. LEXIS 52720, 2010 WL 2209189 (E.D.Tex., May 28, 2010), *aff'd* 485 F.App'x 1, 2012 U.S. App. LEXIS 5979, 2012 WL 975022 (5th Cir.2012) (citing *Briscoe v. LaHue,* 460 U.S. 325, 330–31, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) in holding that there was no cause of action against an officer who changed his testimony so as to testify falsely in a prison disciplinary

proceeding). Nor has Hurd shown any basis for a claim of discrimination in that he has pointed to no one similarly situated to him who received different treatment nor to any facts showing that any such different treatment had no rational basis. This claim lacks merit; however, in the interest of justice, it should be dismissed without prejudice.

## VI. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 36) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Defendants' motion to dismiss (docket no. 31) is GRANTED and the above-styled civil action is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. It is further

**ORDERED** that the dismissal of any new claims raised in the Plaintiff's third amended complaint (docket no. 39) and supplemental complaint (docket no. 40) is **without prejudice**, with the statute of limitations on these claims being suspended for a period of 60 days following the date of entry of final judgment. Finally, it is

**ORDERED** that any and all motions which may be pending in this civil action are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **6** day of **March, 2017.**

_____
Ron Clark, United States District Judge